**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| KATHLEEN ANNE BRIGHT, | CASE NO. 1:23-CV-00577-DCN |
| Plaintiff, | JUDGE DONALD C. NUGENT |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | MAGISTRATE JUDGE CARMEN E. HENDERSON |
| Defendant, | **REPORT AND RECOMMENDATION** |

## I. Introduction

Plaintiff, Kathleen Anne Bright ("Bright" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

## II. Procedural History

On February 24, 2019, Claimant filed an application for SSI, alleging a disability onset date of September 29, 2013. (ECF No. 7, PageID #: 52). The application was denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (*Id.*). On May 1, 2020, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (*Id.*). On June 25, 2020, the ALJ issued a written decision finding Claimant was not disabled. (*Id.* at PageID #: 52-63). The ALJ's

decision became final on December 9, 2020, when the Appeals Council declined further review. (*Id.* at PageID #: 33). Claimant appealed to the United States District Court for the Northern District of Ohio and, on February 14, 2022, based on the parties' stipulation, the case was remanded to the Commissioner for further proceedings. (*Id.* at PageID #: 754).

On remand, the Appeals Council ordered the ALJ to "[g]ive further consideration to the claimant's maximum RFC during the entire period at issue and provide rationale with specific references to evidence of record in support of the assessed limitations" and "[i]f warranted by the expanded record, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base." (*Id.* at PageID #: 765). On September 1, 2022, the same ALJ held a hearing during which Claimant, again represented by counsel, and an impartial vocational expert testified. (*Id.* at PageID #: 665). On December 20, 2022, the ALJ issued a written decision again finding Claimant was not disabled. (*Id.* at PageID #: 664-80).

On March 30, 2023, Claimant filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1.) The parties have completed briefing in this case. (ECF Nos. 8, 11, 12). Claimant asserts the following assignments of error:

> (1) The ALJ erroneously failed to comply with the previous order of this Court when she failed to provide sufficient rationale regarding her failure to adopt the findings of the treating sources and properly consider Plaintiff's symptoms in the RFC.
>
> (2) The ALJ erroneously failed to comply with the previous order of this Court when she failed to provide sufficient rationale regarding her failure to properly consider Plaintiff's symptoms in accordance with the criteria of Social Security Ruling 16-3p and failed to find that the intensity, persistence and limiting effects of Plaintiff's symptoms precluded her from engaging in substantial gainful activity on a full-time and sustained basis.
>
> (3) The ALJ erred at Step Three of the Sequential Evaluation when she failed to find that Plaintiff satisfied the criteria of Listing 12.04.

(ECF No. 8 at 1).

## III. Background

### A.  Relevant Hearing Testimony

The ALJ summarized Claimant's allegations and the relevant testimony from the hearing:

> The claimant alleged that she was unable to perform work due to the limiting signs and symptoms associated with her severe impairments. She testified experiencing a lot of depression past suicide attempts, that she stayed in her room for days, and that she experienced manic episodes. She described poor self-care, that she experienced crying spells, and that she experienced fears related to her past trauma. She noted that she had periods of impulsivity related to money and that she had problems interacting with others. Further, the claimant described limitations with her memory, completing tasks, concentration, understanding, following instructions, as well as with managing change and stress (3E, 17E).

(ECF No. 7, PageID #: 670).

### B.  Relevant Medical Evidence

The ALJ also summarized Claimant's health records and symptoms:

> The claimant has a history of signs and symptoms associated with her severe impairments. She underwent intensive outpatient care for substance abuse (alcohol) between January 3, 2018 and April 30, 2018 (1F). During that period, she received inpatient treatment between February 11, 2018 and February 26, 2018 for suicidal ideation with a known history of bipolar disorder and post-traumatic stress disorder (2F). Soon thereafter, she again received inpatient treatment in the dual diagnosis unit between February 26, 2018 and March 8, 2018 for treatment of severe alcohol dependence as well as bipolar disorder (3F/25-27). Finally, the claimant required inpatient treatment between June 8, 2018 and June 26, 2018 for suicidal ideation with associated self-harm. Treatment included individual and group therapy as well as medication adjustments. Her discharge diagnoses included bipolar, mixed, PTSD, and alcohol abuse for which lithium, Vistaril, Seroquel, Cymbalta, Buspar, and Neurontin were prescribed (2F/17-19, 10F/17-36).
>
> The claimant sought treatment for her severe impairments as of the application date. Treatment notes from March 12, 2019 reflect that she stopped treating with lithium due to associated vomiting. However, she reported compliance with her other psychotropic medications at that time (6F/3).
>
> The claimant presented for a psychological consultative examination with Deborah Koricke, PhD on June 4, 2019. She reported that she stopped her past work as a teacher because she felt it was too demanding upon her mental health. She described a history of multiple psychiatric hospitalizations for suicidal

ideation as well as alcohol abuse, a history of significant trauma due to being kidnapped and raped in 2016, low energy, and fear of leaving the house alone. She also outlined sleep difficulties, periods of angry rage, difficulty with interpersonal relationships, and significant anxiety. However, she noted that she had a sobriety date of March 30, 2019, that she attended Alcoholics Anonymous (AA) meetings three to five times per week, and that she met with her sponsor at least two hours per week. She presented in appropriate business-like clothes with styled hair upon examination, and her eye contact was good. Her speech was intelligent and articulate, and her thought processes were coherent and goal directed. Her mood was "somewhat dysthymic," but "primarily" neutral with a full range of affect. Her attention and concentration were assessed to be intact, to include the ability to perform simple math and serial seven subtractions. Her recent and remote memory were "good," to include repeating seven digits forward and three digits backward, spelling "WORLD" forward and backward, and repeating three of three objects immediately and after a delay. The claimant's cognitive functioning was seen to be within the average range at least, if not slightly above based on her educational achievement. Additionally, her insight and judgment were good. She was assessed with PTSD, alcohol use disorder, severe, in full remission, bipolar II disorder, and borderline personality disorder (8F).

Based on the evaluation, Dr. Koricke provided the following functional assessment. The claimant's ability to understand, remember, and carry out instructions was viewed to be quite limited when under the pressure of working due to her diagnoses for PTSD and borderline personality disorder. She could maintain attention and concentration as well as persistence and pace on a short-term basis only because her persistence and pace would become a problem "quickly" due to her "significant psychiatric issues." In terms of her abilities to respond appropriately to supervision and coworkers, she presented as pleasant and cooperative and denied a history of interpersonal difficulties with her supervisors or coworkers. Finally, the claimant's abilities to respond appropriately to work pressures in a work setting was assessed to be her "biggest area of problems" such that she could not work consistently under work pressures, even minor ones, such as sorting clothes, in a work setting due to her bipolar II disorder and "other serious disorders" (8F).

Treatment for the claimant's severe impairments continued. On August 16, 2019, she presented for a diagnostic assessment for the purposes of starting counseling. She reported depressive episodes, a manic episode two months prior, anger, and feelings of worthlessness. She also described lack of motivation, loss of interest, trouble concentrating, racing thoughts, worry, sleep disturbance, impulsivity, auditory hallucinations of music, and impulsivity. She appeared unkempt upon examination with a mistrustful attitude. However, her eye contact was average. Her motoric activity was overactive, and her speech was rapid, but her thought process was logical. Her mood was "depressed" with a full range of affect, and she was cooperative. Her insight and judgment were poor, but she exhibited an

average estimated level of intelligence (14F/7-17). As of her September 12, 2019 counseling session, she presented as engaged and reported that she continued to work on maintaining her sobriety (15F/6). During her December 17, 2019 psychiatric evaluation with Poorvanshi Alag, MD, she reported she no longer felt the need to take Zyprexa, which had been prescribed on an "as needed" basis. She outlined that she took it only once in prior three months, and that she was "thinking more clearly." She was adequately groomed with adequate hygiene upon examination. She was superficially cooperative, but presented as irritable, defensive, and hyper-talkative. However, her thought process remained linear. She exhibited some signs of mood lability, her she was able to sustain attention and concentration. Though her judgment and insight were limited, her recent and remote memory were within normal limits. She was assessed with bipolar I disorder, panic disorder with agoraphobia, and PTSD for which her prescriptions for lithium, gabapentin, Cymbalta, Vistaril, and Buspar were renewed and Abilify was added to her treatment regimen. Further, he encouraged the claimant not to return to full-time work as that would "put too much stress on her" (13F/2-5).

The record reflects continued signs and symptoms associated with the claimant's severe impairments. The record contains a gap in treatment records until late 2020 when she sought treatment for an acute injury (19F/13-16). On January 14, 2021, she presented as alert with normal mood, behavior, and judgment (19F/11-12). Treatment notes from February 7, 2021 reflect that the claimant last saw psychiatry on November 5, 2020 and that she requested a refill of her Cymbalta and Geodon (17F/9). During a telephone encounter on April 23, 2021, she reported that Geodon helped her sleep but that it "knock[ed]" her out during the day. She requested a medication change to manage her daytime anxiety that would not cause drowsiness (17F/8). She presented for a psychiatric evaluation with Syed Ahmed, MD on May 6, 2021 with reported symptoms that included constant anxiety, shaking, anxiety attacks, twitches/tics, anger issues, poor sleep, manic episodes, irritability, and a history of trauma about which she experienced flashbacks and night terrors. Examination findings included a wary, doleful, and very anxious presentation with signs of mild depression. However, her speech was normal in rate and tone, her articulation was coherent, and her affect was appropriate. Her thinking was logical. She exhibited signs of anxiety to include restlessness, but her behavior remained cooperative and attentive. Additionally, her insight was normal and she exhibited intact judgment. She was assessed with bipolar II disorder, generalized anxiety disorder, and other specified depressive disorder for which duloxetine, ziprasidone, diazepam, lithium, hydroxyzine, gabapentin, and buspirone were prescribed (20F/20-23).

The claimant presented to the emergency department on May 15, 2021 for suicidal ideation and use of alcohol, and appeared intoxicated upon her arrival. She was noted to scream in her room as well as to yell obscenities at the nursing staff and Haldol was administered. Laboratory testing reflect that her lithium levels were subtherapeutic. Upon a psychiatric evaluation the following day, her mood was euthymic, and she presented as calm, cooperative, and able to maintain

appropriate eye contact. Her thought process was organized, linear, and goal directed and she exhibited no deficits in recent/remote memory, attention, and concentration. Additionally, while her judgment was poor, she exhibited good insight. She was assessed with intoxication and mood disorder and discharged with recommended outpatient follow up (16F/29- 57).

The claimant presented to the emergency department on May 24, 2021 with suicidal ideation after being found sleeping and intoxicated in her car the evening prior. Upon examination, her mood was depressed with a flat affect. She appeared unkempt but presented as comfortable and calm. She maintained eye contact and answered questions appropriately. She was admitted for inpatient treatment. During her subsequent psychiatric evaluation, she refused to sit up and was irritable and difficult to engage in conversation as she repeatedly fell asleep. Her eye contact was poor, her mood was distressed, and her affect was dysphoric and constricted. However, her thought process remained organized, linear, and goal directed. Additionally, while her insight and judgment were poor, she exhibited no overt deficit in memory, attention, or language. She was assessed with unspecified depressive disorder and alcohol use disorder, no longer in remission. She was transferred to the University Hospital Richmond Psychiatric Ward. Upon her initial examination, she exhibited fair hygiene and grooming with an apathetic attitude and limited eye contact. She demonstrated mild psychomotor agitation and speech that was loud at times with a "whiny" tone. Her mood was depressed with a dysthymic affect, and while circumstantial, her thought process remained coherent. She admitted to passive suicidal ideation but denied hallucinations and exhibited adequate attention and concentration. Her judgment and insight were poor. Treatment included medication adjustments with improvement in her mood, insight, and judgment. Upon her discharge on May 28, 2021, she presented as calm, cooperative, and able to maintain good eye contact. Her speech was not pressured and of a normal volume, and her mood was "good" with a full range of affect. Her cognition was grossly intact, and her insight and judgment were good. Her discharge medications included gabapentin, duloxetine, lithium, olanzapine, and lorazepam (16F).

The evidence supports no sustained worsening in the signs and symptoms associated with the claimant's severe impairments. Clinical findings from June 4, 2021 included normal mood, behavior, and thought content (17F/5-8). On July 8, 2021, she started an intensive outpatient treatment program for her assessed generalized anxiety disorder and major depressive disorder moderate (18F/31-40). During an evaluation with Raman Baishnab, DO on July 16, 2021, she reported feeling the most depressed she had ever been. She admitted to having blackout alcohol binges over the prior two or three months during which she had been off and on her bipolar medications. She described experiencing insomnia, anxiety, impulsivity, and racing thoughts. She presented as mildly malodourous with fair eye contact. She exhibited rapid, loud, and pressured speech, but remained cooperative. Her thought process was tangential with some goal-directedness, her mood was hypomanic, and her affect was constricted and irritable. She displayed

6

fair attention, insight, and judgment, but her memory remained intact. She was assessed with severe alcohol use disorder, bipolar II disorder, and chronic PTSD for which venlafaxine was added to her treatment regimen (18F/10-17). As of her July 28, 2021 follow up, she reported no improvement in her symptoms that included fragmented sleep due to nightmares and panic. Clinical findings included good eye contact and a cooperative presentation. Her mood was depressed with a constricted and irritable affect, but her thought process was more organized. Her insight, judgment, and attention were fair, but her memory remained intact. Her dosage of venlafaxine was increased, and prazosin was added to her treatment regimen (18F/41-44).

The claimant continued treatment for her severe impairments. She reported feeling "okay" during her August 5, 2021 evaluation with Dr. Ahmed, noting a difference in her symptoms but that she felt a higher dosage of medication was needed due to continued anxiety and depression. She denied consuming any alcohol. She appeared friendly, attentive, cooperative, and communicative upon examination. She presented as anxious, but her speech was normal in rate and volume and her mood was normal with an appropriate affect. Her thinking was logical and she exhibited no signs of hyperactive or attentional difficulties. Additionally, her insight was normal and her judgment was intact. Her medication doses were adjusted (20F/10-11). The claimant failed to show for her August 30, 2021 follow up with Dr. Baishnab (18F/50). As of her October 19, 2021 follow up with Dr. Ahmed, the claimant reported that she was "doing so much better," that she had no suicidal thoughts, and that she was happy with her treatment. She described good energy, that she was doing more around the house, that her sleep improved, and that she was not as isolated as she had been. Examination findings included an anxious, but calm, attentive, communicative, and cooperative presentation. Her speech was normal in rate and volume, her mood was normal, and her affect was appropriate. She also exhibited logical thinking, no signs of hyperactive or attentional difficulties, normal insight, and intact judgment. Her treatment regimen was unchanged (20F/4-5).

The signs and symptoms associated with the claimant's severe impairments remained stable overall. On January 17, 2022, she indicated that she was "so happy" that she had found the right medication as the combination she was on was "working well" for her. She denied significant anxiety or any depression. She appeared calm, attentive, communicative, and cooperative upon examination. Her mood was normal with an appropriate affect and his thinking was logical. She showed subtle signs of anxiety, but no signs of hyperactive or attentional difficulties and here insight was normal with intact judgment (27F/7-8). The claimant reported she was "not doing good" with anxiety and sleep difficulties on April 9, 2022. She admitted to not taking her medication, and it was noted that she was "missing one appointment for every one she was keeping." However, she noted she was "getting back on track" with improving energy and sleep. The claimant was calm, attentive, communicative, and cooperative. She was mildly anxious, but her affect was appropriate and she showed logical thinking. She

7

exhibited no signs of hyperactive or attentional difficulties, her insight was normal, and her judgment appeared intact (27F/5-6). Finally, on June 16, 2022, she reported stress about her mother wanted her to leave the house. She explained that she was unable to work in an environment with people hovering over here, but that she can function when alone. The claimant appeared wary and anxious with mild depression upon examination but remained attentive and communicative. Her affect was appropriate, and her thinking was logical. She showed no signs of hyperactive or attentional difficulties, her insight was normal, and her judgment was intact (27F/1-2).

(*Id.* at PageID #:671-76).

## C. Opinion Evidence at Issue

The ALJ considered multiple opinions but only the opinions of Catherine Cantro, LPCC and Dr. Deborah Koricke are at issue on appeal. In a "Mental Impairment Questionnaire" dated May 31, 2022, Cantro indicated she met with Claimant weekly for approximately one year; Claimant suffered from "debilitating anxiety (mania) and depressive episodes," affecting her personal life and ability to work; Claimant was unable to meet competitive standards in almost every area of mental functioning; and Claimant would be absent from work six to seven days a week and off task 100% of the time. (ECF No. 7 at PageID #: 1183-84). Cantro further indicated Claimant had "multiple hospitalizations over 15 years and difficulty caring for her daily living." (*Id.* at PageID #: 1184).

Koricke conducted a psychological evaluation on June 4, 2019. (*Id.* at PageID #: 490). Koricke indicated that Claimant "was cooperative and her manner of relating was adequate;" she maintained good eye contact; she was "intelligent and articulate; the "[q]uality of her voice was clear and expressive and receptive language skills were adequate;" her "thought processes were coherent and goal directed;" her attention and concentration were intact; she maintained good insight, judgment, and recent and remote memory skills; and her cognitive functioning was "at least in the average range if not slightly above." (*Id.* at #: 493-94). However, Koricke opined that

"under the pressure of working [Claimant's] ability to understand, remember, and carry out instructions consistently is viewed as quite limited;" Claimant could maintain attention and concentration "only on a short-term basis;" and Claimant "cannot work consistently under work pressures, even minor ones such as sorting clothes, in a work setting with her bipolar II and other serious disorders." (*Id.* at PageID #: 496).

## IV.    The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

1. The claimant has not engaged in substantial gainful activity since February 24, 2019, the application date (20 CFR 416.971 et seq.). . . . The claimant has the following severe impairments: depressive, bipolar and related disorder; anxiety and obsessive-compulsive disorders; personality disorder; trauma and stressor-related disorder; and substance addiction disorder (alcohol) (20 CFR 416.920(c)).

2. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

3. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: limited to perform simple, routine tasks; occasional interactions with supervisors, coworkers, and the public; and limited to occasional routine workplace changes.

4. The claimant is unable to perform any past relevant work (20 CFR 416.965).

. . .

8. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

9. The claimant has not been under a disability, as defined in the Social Security Act, since February 24, 2019, the date the application was filed (20 CFR 416.920(g)).

(ECF No. 7, PageID #: 667, 669-70, 678-80).

9

**V. Law & Analysis**

    **A. Standard of Review**

        The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

        "After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

    **B. Standard for Disability**

        The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant

work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Claimant raises three issues on appeal, arguing that (1) the ALJ "failed to properly evaluate the opinions of the treating sources and failed to take Plaintiff's symptoms into consideration;" (2) the ALJ failed to properly consider Claimant's symptom testimony in accordance with Social Security Ruling ("SSR") 16-3p;" and (3) the ALJ erred in finding that Claimant did not satisfy the criteria of Listing 12.04. (ECF No. 8 at 10, 14, 19).

### 1. The ALJ complied with the remand order and properly evaluated the medical opinions.

Claimant argues the ALJ "did not comply with the Order of Remand in that she failed to properly evaluate the opinions of the treating sources and failed to take Plaintiff's symptoms into consideration." (ECF No. 8 at 9). She argues that while the ALJ found Catherine Cantro's opinion unpersuasive, the ALJ also "found that 'the evidence supports that the claimant experienced limiting signs and symptoms associated with her severe impairments'" and acknowledged clinical findings supporting Claimant's limitations. (*Id.* at 11-12). Thus, Claimant asserts that because "the ALJ agreed with the opinion of Catherine Cantro," failing to include all

11

of Claimant's acknowledged symptoms in the RFC was harmful error because, based on the vocational expert's testimony, it would impact the conclusion that Claimant could perform work in the national economy. (*Id.* at 12).  Claimant further argues that the ALJ found Dr. Deborah Koricke's opinion unpersuasive because the assessed limitations were not consistent with the findings but "had one page earlier found that Plaintiff's signs and symptoms were consistent with the medical evidence" and "[t]his internal inconsistency constitutes harmful and reversible error in this matter." (*Id.* at 13).

The Commissioner responds that "[s]ince Plaintiff has not challenged the ALJ's evaluation of Dr. Alag's opinion, which was the only treating source opinion referenced in the Remand order, her argument regarding the ALJ's compliance with the Order should be rejected." (ECF No. 11 at 9). As to Cantro's opinion, the Commissioner argues that "the ALJ complied with the revised regulations and sufficiently explained why she discounted Ms. Cantro's opinion" in terms of supportability and consistency. (*Id.* at 10-11). The Commissioner argues that because the ALJ found Claimant's testimony not entirely consistent with the medical evidence, "the ALJ did not err by not incorporating Ms. Cantro's limitations in the RFC" given that they were based largely on Claimant's subjective complaints. (*Id.* at 12). As to Koricke's opinion, "the Commissioner reviewed the decision and was unable to find a passage where the ALJ stated that Plaintiff's signs and symptoms were consistent with the medical evidence" such that there was no inconsistency. (*Id.* at 12 n.6).

Claimant replies that the ALJ's "brief" discussion of Cantro's opinion "failed to include her earlier observation that Cantro 'outlined that the claimant had multiple hospitalizations over 15 years and difficulty caring for daily living.'" (ECF No. 12 at 1).

At Step Four, the ALJ must determine a claimant's RFC by considering all relevant

medical and other evidence.  20 C.F.R. § 416.920(e).  The Appeals Council specifically ordered the ALJ here to "evaluate the medical source opinions and prior administrative medical findings pursuant to the provisions of 20 CFR 416.920c." (ECF No. 7 at PageID #: 765). This regulation provides that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)."  20 C.F.R. § 416.920c(a).  Nevertheless, an ALJ must "articulate how [he] considered the medical opinions and prior administrative medical findings" in adjudicating a claim.  *Id.*  Medical source opinions are evaluated using the factors listed in § 416.920c(c).  The factors include supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." *Id.* at § 416.920c(c).  The ALJ is required to explain how he considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors.  *Id.* at § 416.920c(b)(2).

Turning first to Koricke's opinion, the Court concludes that the ALJ complied with the regulations in finding this opinion not persuasive. The ALJ found that "the consultative examination findings that included good eye contact, intact attention and concentration, good insight and judgment, as well as good recent and remote memory" did not support the level of limitations included in Koricke's opinion. (ECF No. 7 at PageID #: 677).  Thus, the ALJ addressed the supportability of the opinion, finding the limitations were not consistent with Koricke's own observations of Claimant. 20 C.F.R. § 404.1520c(c) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."). The ALJ's

additional observation that Koricke's opinion was "not consistent with" other medical findings in the record—including "findings of a pleasant, cooperative, and communicative presentation, a level of cognitive functioning that was estimated to be at least within the average range, normal/intact memory, attention, and concentration, logical thinking, normal mood, behavior, and insight, as well as intact judgment"—show that the ALJ also considered consistency. (ECF No. 7 at PageID #: 677); 20 C.F.R. § 404.1520c(c) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.").

Similarly, the ALJ concluded Cantro's opinion was not persuasive because the "summarized findings do not support the level of limitation assessed by Ms. Cantro" and because the opinion seemed "to rely more heavily on the claimant's subjective reports than the overall clinical findings . . . and reported level of functional abilities that included the ability to care for her cat, perform household chores, prepare simple meals, drive, spend time with others, and focus sufficiently to watch television." (ECF No. 7 at PageID #: 677). Based on these statements, it is clear to the Court that the ALJ found Cantro's opinion unsupported because she did not rely on objective medical evidence rather than Claimant's own reports and because the opinion was not consistent with the other evidence in the record.

In accordance with the regulations, the ALJ considered both the supportability and consistency of Koricke's and Cantro's opinions when finding them unpersuasive. This decision is supported by substantial evidence in the record and the Court must defer to it "even if there is substantial evidence that would have supported an opposite conclusion." *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). Thus, contrary to Claimant's argument, the ALJ complied

with the order of the Appeals Council.

**2. The ALJ properly considered Claimant's symptom testimony.**

Claimant argues that "the testimony, written statements, and medical evidence provided evidence regarding the intensity, persistence and limiting effects of Plaintiff's symptoms along with the limited nature of Plaintiff's daily activities and the difficulties she had" and "[a]lthough the ALJ acknowledged these symptoms (Tr. 644), she failed to note these problems when detailing limitations in the RFC." (ECF No. 8 at 17-18). She argues that "[t]his cherry picking of the evidence was harmful error in that the RFC failed to include limitations restricting Plaintiff's ability to sustain full-time work." (*Id.* at 18). Thus, it is Claimant's position that the RFC is not supported by substantial evidence. (*Id.*).

The Commissioner responds that the ALJ "provided an in-depth discussion of Plaintiff's hearing testimony, reports to medical professionals, the objective medical evidence, activities and the Function Reports that were completed by Plaintiff and her parents" and "reasonably concluded that Plaintiff had some limitations, but failed to show that her symptoms were severe enough to preclude all work." (ECF No. 11 at 13). The Commissioner argues that in reaching this decision, the ALJ relied on "the objective findings, treatment notes that reflect gaps in treatment as well as instances of medication noncompliance and activities that included caring for Plaintiff's cat, preparing simple meals, performing household chores, driving, shopping in stores, living with others, and sustaining sufficient attention span to watch television." (*Id.*) The Commissioner asserts that Claimant's "argument amounts to nothing more than an improper invitation for the Court [to] re-weigh the evidence." (*Id.* at 14).

Claimant replies that the Commissioner's argument "cited to pages in the record which are not part of the current ALJ decision," but rather cites to the hearing transcript such that it is a

*post hoc* rationalization that cannot be accepted. (ECF no. 12 at 2).

The evaluation of a claimant's subjective complaints rests with the ALJ. *See Siterlet v. Sec'y of HHS*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). In evaluating a claimant's symptoms, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record. § 416.929(c); SSR 16-3p, 2017 WL 5180304.

Beyond medical evidence, SSR 16-3p sets forth seven factors that the ALJ should consider: daily activities; location, duration, frequency, and intensity of the pain or other symptoms; factors that precipitate and aggravate the symptoms; type, dosage, effectiveness, and side effects of medication to alleviate pain or other symptoms; treatment other than medication; any measures other than treatment the individual uses to relieve symptoms; and any other factors concerning the individual's functional limitations and restrictions. 2017 WL 5180304 at *7-8. The ALJ need not analyze all seven factors but should show that she considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). SSR 16-3p states:

> [I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner.

The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms . . . and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017

WL 5180304; *see also Felisky v. Bowen*, 35 F.2d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so."). While a reviewing court gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18CV1639, 2019 WL 2465273, at *10 (N.D. Ohio April 24, 2019) (citing *Rogers*, 486 F.3d at 248–49), *report & recommendation adopted*, 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019).

Here, in determining the RFC, the ALJ first recognized Claimant's testimony and the function reports completed by her parents before providing a detailed review of the medical records. (ECF No. 7 at PageID #: 670-676). The ALJ ultimately found that "the evidence supports that the claimant experienced limiting signs and symptoms associated with her severe impairments" but "the claimant's statements about the intensity, persistence, and limiting effects of her symptoms are inconsistent because the level of limitation alleged is not altogether supported by the objective findings." (*Id.* at 676). The ALJ identified the evidence she relied on in finding that Claimant's symptoms were not as severe as alleged and the limitations she found warranted:

> Treatment notes reflect gaps in treatment as well as instances of medication noncompliance (16F/29-57, 17F/9, 18F/50, 27F/5-6). The claimant reported that she was able to help care for her cat, prepare simple meals, perform household chores, drive, shop in stores, live with others, and sustain sufficient attention span to watch television (3E, 17E). The treatment notes reflect findings of logical thinking, normal, intact, and/or deficit of memory, attention, and concentration, as well as at least an average level of cognitive functioning (13F/2- 5, 14F/7-17, 16F/29-57, 18F/10-17, 18F/41-44, 20F/4-5, 20F/10-11, 20F/20-23, 27F/1-2, 27F/5- 6, 27F/7-8). The claimant also demonstrated normal mood, intact/normal judgment, normal behavior, an appropriate affect, normal insight, as well as a communicative, cooperative, and pleasant presentation (8F, 14F/7-17, 16F/29-57, 17F/5-8, 18F/10-17, 18F/41-44, 19F/11-12, 20F/4-5, 20F/10-11, 20F/20-23, 27F/1-2, 27F/5-6, 27F/7-8).

> Therefore, functional limitations are supported. Due to her reported troubles with concentrating and racing thoughts as well as findings of overactive motoric activity, she is limited to perform simple, routine tasks. Due to her reported issues interacting with others, reported history of trauma, mood abnormalities, irritability, and speech abnormalities, she should have no more than occasional interactions with supervisors, coworkers, and the public. Further, to account for impairments of insight and judgment and to avoid exacerbating her symptoms with stress, she should be limited to only occasional, routine workplace changes.

(*Id.* at PageID #: 676). This analysis makes clear that the ALJ considered the relevant factors under SSR 16-3p, including Claimant's daily activities and frequency and intensity of symptoms. Thus, considering the record as a whole, the Court is satisfied that the ALJ considered the relevant evidence in accordance with SSR 16-3p and that a reasonable mind might accept that evidence as adequate to support the ALJ's credibility finding. As the Court will not reweigh the evidence when reviewing an ALJ's decision, no compelling reason exists for the Court to disturb the ALJ's credibility finding. *Cross*, 373 F. Supp. 2d at 732.

### 3. The ALJ did not err in finding that Claimant failed to meet Listing 12.04.

Claimant's final argument addresses the ALJ's conclusion that she did not satisfy any of the listings, specifically Listing 12.04. (ECF No. 8 at 19). To meet a listing, the claimant "must satisfy all of the [listing's] criteria." *Nash v. Comm'r of Soc. Sec.*, No. 19-6321, 2020 WL 6882255, at *3 (6th Cir. Aug. 10, 2020). The claimant "bears the burden of showing that an impairment meets or equals a listed impairment." *Id.* If the ALJ's listing finding is supported by substantial evidence, based on the record as a whole, the Court will defer to the ALJ's finding, "[e]ven if the record could support an opposite conclusion." *Id.* at *4. Moreover, if the ALJ's listing finding is not supported by substantial evidence, the error is harmless if the claimant cannot show that her impairments met or medically equaled a listing. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014).

Listing 12.04 addresses depressive, bipolar, and related disorders. 20 C.F.R. pt. 404,

subpt. P, app. 1, § 12.00(A)(1).  Listing 12.04 has "three paragraphs, designated A, B, and C" and a claimant's mental disorder "must satisfy the requirements of both paragraphs A and B, or the requirements of both paragraphs A and C." *Id.* at § 12.00(A)(2).

Claimant argues she satisfies both the paragraph A and paragraph C criteria for Listing 12.04 such that the ALJ erred in finding her not disabled. (ECF No. 8 at 19-20). She asserts that in addressing the paragraph C criteria, the ALJ "failed to discuss the fact that the treatment records, [including Claimant's suicide attempts and hospitalizations], demonstrated a marginal adjustment by Plaintiff." (*Id.* at 21).

The Commissioner responds that the ALJ's Step Three determination was supported by substantial evidence because it "was consistent with the prior administrative medical findings of state agency psychologists Drs. Johnston and Haskins, who reviewed Plaintiff's mental health records and concluded her impairments did not meet or medically equal" Listing 12.04, among others. (ECF No. 11 at 17). The Commissioner argues that, looking to the opinion as a whole, the ALJ's evaluation of the paragraph C criteria is supported by the finding of only moderate limitations in her ability to adapt and manage herself, her response to treatment, and her daily activities. (*Id.* at 18-19).

To meet the paragraph C criteria of Listing 12.04, the claimant must have "a medically documented history of the existence of the disorder [in the listing] over a period of at least 2 years" and there must be evidence of both "[m]edical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder" and "[m]arginal adjustment, that is, [the claimant] ha[s] minimal capacity to adapt to changes in [their] environment or to demands that are not already part of [their] daily life." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04(C).

In addressing the paragraph C criteria, the ALJ concluded that "the evidence does not support [a] finding of marginal adjustment, meaning that the claimant had minimal capacity to adapt to changes in the environment or to demands that were not already a part of daily life." (ECF No. 7 at PageID #: 669-70). While this analysis may be "cursory, the Court may look to the decision as a whole in evaluating the ALJ's Step Three conclusions." *Scott v. Kijakazi*, No. 4:22CV878, 2023 WL 4010687, at *8 (N.D. Ohio June 15, 2023) (collecting cases). In evaluating the paragraph B criteria and finding no more than moderate limitations, the ALJ highlighted Claimant's ability to perform some household chores, prepare meals, shop, spend time with friends and family, drive, watch television, and care for her cat. (ECF No. 7 at PageID #: 669). Additionally, the ALJ noted that Claimant "exhibited good, normal/intact, or no deficit in memory as well as at least an average level of cognitive functioning;" was "pleasant, cooperative, and communicative;" "demonstrated intact/no deficit of attention and concentration as well as logical thinking;" and had "normal mood, normal behavior, intact/normal judgment, normal insight, and appropriate affect." (*Id.*). Courts have relied on similar evidence to support a finding that the paragraph C criteria is not satisfied. *See Scott*, 2023 WL 4010687, at *8; *Fauvie v. Comm'r of Soc. Sec.*, No. 4:20-CV-2750, 2022 WL 1459063, at *12-13 (N.D. Ohio Mar. 15, 2022), *report & recommendation adopted*, 2022 WL 2662866 (N.D. Ohio July 11, 2022); *Roden v. Comm'r of Soc. Sec.*, No. 2:20-CV-4983, 2021 WL6111743, at *10 (S.D. Ohio Dec. 27, 2021), *report & recommendation adopted*, 2022 WL 138430 (S.D. Ohio Jan. 14, 2022).

Thus, the Court agrees with the Commissioner that substantial evidence supports the ALJ's decision that Claimant did not satisfy the paragraph C criteria. To the extent Claimant argues the record supports an alternate conclusion, the Court must defer to the ALJ's decision "even if there is substantial evidence that would have supported an opposite conclusion." *Wright*,

321 F.3d at 614.

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Claimant's

Statement of Errors and AFFIRM the Commissioner's decision.

Dated: December 8, 2023

s/ *Carmen E. Henderson*_____
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

_____

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).